IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK, N.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-01789-S-BT |
| | § | |
| BALMOR TRANSPORT, INC., and | § | |
| RICARDO BALLESTEROS, JR. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a Motion for Default Judgment (ECF No. 51) filed by Plaintiff BMO Harris Bank, N.A. (BMO) against Defendant Ricardo Ballesteros, Jr. For the following reasons, the District Court should GRANT BMO's Motion and enter a default judgment against Ballesteros, consistent with these Findings, Conclusions, and Recommendation. Moreover, the District Court should GRANT in part and DENY in part BMO's request for attorneys' fees and costs.

## Background

This case arises out of three sets of contracts: (1) a purchase-money loan; (2) a set of leases; and (3) a set of guaranties. During the period from March 2014 to July 2016, General Electric Capital Corporation (GECC) leased Defendant Balmor Transport Inc. (Balmor) several vehicles for use in Balmor's business (the "Leases"). Compl. 2-4, ¶¶ 9, 11 (ECF No. 1). The vehicles secured the Leases. *Id.* 5-6, ¶¶ 15-16. In August 2015, GECC loaned Balmor money to purchase vehicles for

1

use in Balmor's business (the "Loan"). *Id.* 2, ¶ 8. The vehicles secured the Loan. *See id.* Ballesteros guaranteed both the Loan and the Leases (the "Guaranties"). *Id.* 6, ¶¶ 18, 20. In December 2015, GECC assigned BMO all its rights and interests under the Leases, the Loan, and the Guaranties. *Id.* 7, ¶ 22. On July 11, 2018, BMO filed its original Complaint in this contract action alleging that Ballesteros and Balmor were in default under the Loan and the Leases and that Ballesteros was in default under the Guaranties. *Id.* 7-9, ¶¶ 24-42. Defendants answered the suit on August 23, 2018 (ECF No. 14).

The case was administratively closed on November 27, 2018 because Balmor filed for bankruptcy in the Southern District of Florida. *See* Order (ECF No. 22). But, with permission of the bankruptcy court, BMO sought to reopen the case as to Ballesteros only. Mot. Reopen Case 1 (ECF No. 24). The Court granted BMO's request and reopened the case as to Ballesteros on April 3, 2019, entered a scheduling order setting trial for the Court's three-week docket beginning November 25, 2019, and ordered the parties to mediate 90 days before trial. *See* Order Reopening Case (ECF No. 25); Sched. Order (ECF No. 27); Mediation Order (ECF No. 28). On August 27, 2019, BMO alerted the Court that Ballesteros did not intend to comply with the Court's order to mediate 90 days before trial and asked for relief from the mediation requirement. Pl.'s Mot. Eliminate Mediation Requirement 3 (ECF No. 36) ("Ballesteros lacks counsel and does not intend to appear for mediation[.]"). In response, the Court extended the deadline to mediate to October 4, 2019 and referred the parties to mediate before the undersigned. *See*

Order (ECF No. 37). The undersigned set the case for mediation on October 2, 2019 and ordered the parties to submit the names of all persons who would attend the mediation and certify that individuals with final settlement authority would appear on behalf of the parties. *See* Order Setting Settlement Conference 1-2 (ECF No. 38). The undersigned also directed BMO to communicate a settlement demand to Ballesteros no later than a certain date and directed Ballesteros to respond to that demand. *Id.* 2. While BMO complied with this order, Ballesteros did not. *See* Notice Regarding Settlement Conference (ECF No. 40).

BMO again requested the Court to relieve it of the mediation requirement because of Ballesteros's "apparent lack of intent to participate in the settlement"—particularly, his unresponsiveness to the Order setting the settlement conference and to BMO's settlement demand. Pl.'s Second Mot. Eliminate Mediation Requirement 2 (ECF No. 42). In its motion, BMO acknowledged that Ballesteros found "no point" in mediating and, as a resident of Florida, lacked resources to appear in Texas for mediation. *Id.* 1-2. The Court granted BMO's motion in part, allowing the parties to appear for mediation before the undersigned telephonically. *See* Order (ECF No. 43). BMO timely notified Ballesteros of the telephonic settlement conference by leaving him a detailed voicemail and by sending a same-day courier to his last known address. *See* Certificate of Compliance (ECF No. 44); Ex. A. (ECF No. 44-1). Despite these efforts, and despite warning that failure to participate in the settlement conference would result in sanctions, Ballesteros did not attend the telephonic mediation. *See* Electronic Minute Entry (ECF No. 46).

The Court then ordered Ballesteros to show good cause in writing for failing to participate in the telephonic settlement conference. *See* Order Show Cause 1 (ECF No. 48). Ballesteros was cautioned that a failure to comply with the show-cause order "may result in an order striking his answer and directing the entry of a default judgment against him." *Id.* 2. Ballesteros failed to respond; consequently, the Court struck his answer, directed the Clerk to enter a notice of default against him, and ordered BMO to move for default judgment. Order Striking Answer (ECF No. 49).

The Clerk entered default against Ballesteros on October 29, 2019. Entry of Default (ECF No. 50). BMO filed its Motion for Default Judgment on November 26, 2019. Pl.'s Mot. Default J. (ECF No. 51). Ballesteros did not respond.

**Legal Standards and Analysis**

I. Motion for Default Judgment

Rule 55 governs applications for default and default judgment. Fed. R. Civ. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 55(a)). After the entry of default, a plaintiff may apply to the Court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A Charles Alan Wright & Arthur R. Miler, Federal Practice and Procedure § 2685 (4th ed.)). To determine whether to enter default judgment, courts examine: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing Charles Alan Wright & Arthur R. Miler, Federal Practice and Procedure § 2685 (2d ed. 1983)).

In view of the record in this case and the relevant legal standards, including the *Lindsey* factors, the Court recommends entering default judgment against Ballesteros. Here, there are no material issues of fact; rather, because of Ballesteros's default, the Court takes as true the facts as BMO alleges them. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478 at *2 (N.D. Tex. Jan. 26, 2017). Nor is there substantial prejudice against Ballesteros. Ballesteros was informed repeatedly that his failure to cooperate and comply with orders would result in sanctions, including that his answer would be

stricken from the record and that the Court would direct BMO to move for default judgment. The record contains ample evidence to support the conclusion that Ballesteros behaved willfully when he refused to participate in mediation, and there was good reason to find that Ballesteros's pattern of contumacious conduct in these proceedings established that no lesser sanction would be sufficient to serve the interests of justice. *See* Order Striking Answer 2. The grounds for default against him were thus clearly established. *See Cortis, Inc. v. Cortislim Int'l, Inc.*, 2016 WL 6330579, at *1 (N.D. Tex. July 22, 2016) (granting default judgment following order striking defendant's pleadings and entry of default). And the Clerk properly entered default against Ballesteros. Moreover, entering default judgment against Ballesteros is not "harsh." *See id.* at *3 ("[T]he harshness of ordering a default judgment is mitigated by the fact that numerous lesser sanctions proved ineffective."). Finally, the Court is not aware of any facts that would constitute good cause to set aside the default should Ballesteros challenge it.

The pleadings also sufficiently support a default judgment, and damages can be calculated with reasonable certainty without a hearing. BMO's well-pleaded allegations establish that the Loan, Leases, and Guaranties are valid and enforceable agreements between BMO and Ballesteros. Compl. 2-4, ¶¶ 8-11. The allegations also demonstrate that BMO performed under those agreements and that Ballesteros and Balmor breached those agreements by failing to make the payments owed to BMO as they became due. *Id.* 7-9, ¶¶ 25, 36. BMO has also adequately alleged that Ballesteros's breach damaged it. *Id.* 8-9, ¶¶ 28, 33, 44.

Moreover, the Guaranties clearly state that "if [Balmor] fails to pay the indebtedness promptly as the same becomes due, or otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire indebtedness and all losses, costs, attorneys fees and expenses which may be suffered[.]" Compl. Ex. I, J (ECF 1-1 at 54, 56). The Guaranties list Ballesteros as the guarantor. *Id.* Finally, BMO's allegations establish that it is entitled to "all rights, titles, and interests" under the Loan, the Leases, and the Guaranties. Compl. 7, ¶ 22; *see also* Compl. Ex. K (ECF No. 1-1 at 62-63). Accordingly, Ballesteros is liable to BMO for Balmor's debts under the Loan and the Leases and is obligated to pay damages.

Generally, in the default-judgment context, unliquidated damages are not awarded without an evidentiary hearing. Fed. R. Civ. P. 55(b)(2)(B); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). However, this rule is subject to exception when the amount claimed is a liquidated sum or one capable of mathematical calculation. *See James*, 6 F.3d at 310; *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam) (citations omitted). Here, BMO's damages are mathematically calculable from evidence submitted with its motion.

Under the terms of the Loan, BMO is entitled to all outstanding principal and all interest accruing on that principal at the default rate of 1.5% per month. Compl. Ex. A ¶¶ 5.2, 5.3 (ECF No. 1-1 at 4). Under the Leases, BMO is entitled to: (1) all past due amounts as of the termination date; (2) the present value of all future amounts due and owing; (3) the present value of the purchase option; and

7

(4) all interest accruing on the principal at the default rate of 18% per annum. Compl. Ex. B ¶ 18(a) (ECF No. 1-1 at 19-20); Ex. C ¶ 2(a) (ECF No. 1-1 at 26). Both the Loan Agreement and the Leases provide that BMO is entitled to recover the cost associated with the repossession and sale of the collateral and attorneys' fees and costs associated with pursuing this action. Compl. Ex. A ¶ 5.2 (ECF No. 1-1 at 4) (Loan); Ex. B ¶ 18(a) (ECF No. 1-1 at 20) (Leases). BMO alleges that Balmor failed to make its March 1, 2018 payment under the Loan and every payment since. Compl. 7, ¶ 25. BMO has provided evidence that it repossessed the vehicles that secured the Loan and sold them on June 13, 2018, netting $31,150.00 and reducing Balmor's indebtedness under the Loan—then $5,963.48 in fees and interest and $51,110.40 in principal—to $25,923.88. Pl.'s App. 9 (ECF No. 53-1). With interest, BMO calculates that it is entitled to recover $32,813.96 under the Loan as of November 22, 2019. *Id.* 10.

BMO further alleges that Balmor defaulted under some of the Leases with respect to the January 1, 2018 payment and under one of the Leases with respect to the March 1, 2018 payment and failed to make payments under any of the Leases since those dates. Compl. 8-9, ¶ 36. With respect to the five different lease schedules that make up the Leases, BMO has provided evidence of the following:

8

| Sched. | Past-due as of Nov. 15, 2018 | Present value of future amounts due | Collateral sale yield | Net proceeds, with repo expenses | Due and owing as of Nov. 22, 2019, with interest |
|---|---|---|---|---|---|
| 1 | $110,656.89 | $165,427.25 | $131,649.50 | $127,043.75 | $176,308.89 |
| 2 | $66,886.62 | $107,168.50 | $79,041.50 | $74,184.65 | $118,142.22 |
| 3 | $35,291.49 | $58,250.24 | $48,000.00 | $43,932.54 | $58,683.85 |
| 4 | $37,309.45 | $105,222.46 | --[1] | -- | $168,609.50 |
| 5 | $29,242.31 | $118,274.52 | $99,950.00 | $94,967.51 | $62,161.93 |

Pl.'s App. 11-14. Accordingly, BMO calculates that, as of November 22, 2019, it is entitled to recover $583,906.39 under the Leases. *Id.* 14. The Court finds that BMO's damages are mathematically calculable without a hearing. It further finds that BMO has established its damages in the amount of $32,813.96 under the Loan and $583,906.39 under the Leases and that Ballesteros is liable to BMO for these damages under the Guaranties.

## II. Request for Attorneys' Fees

BMO also contends it is entitled to recover $30,429.14 in attorneys' fees and costs for pursuing this action. Mot. 10. Determining a fee award is a two-step process: first, the Court calculates the lodestar, which is the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work, excluding all time that is excessive, duplicative, or inadequately

---

[1] BMO did not repossess the vehicles under the fourth schedule. Pl.'s App. 13.

documented. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012); *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). The party seeking the fees bears the burden to show reasonableness of the hours billed, which necessarily includes the burden of proving the exercise of billing judgment. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam). Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. *Id.* A court may reduce an award by a percentage to substitute for the exercise of billing judgment where it appears from the records supporting a motion for attorney's fees that the attorneys did not exercise billing judgment. *Id.* Once the lodestar amount is calculated, the Court may adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).[2]

In support of its request for attorneys' fees and costs, BMO provided the declaration of Aaron Chapin, an attorney with the firm that represented BMO in this matter. It also provided billing entries reflecting the hours worked and rates charged by the various legal professionals who worked on the matter. From the

---

[2] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

billing entries, it appears these professionals expended a total of 112.7 hours pursuing this matter. Pl.'s App. 101 (ECF No. 53-2). It further appears that attorneys who staffed the matter billed between $235.00 and $395.00 per hour. *See id.* 97-101. In his declaration, Mr. Chapin states that the rates his firm charged BMO "are reasonable for the types of legal services and sophistication of the representation provided" and "reasonable in the various geographical locations in which the services were performed." *Id.* 96. The Court recognizes that the relevant geographical location for determining reasonableness of rates for attorneys' fees is not necessarily where the services were performed. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."). Nonetheless, the Court agrees that the various rates charged in this case are reasonable in Dallas. *Primrose Operating Co v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]"); *Easterling v. U.S. Bank Nat'l Ass'n*, 2018 WL 7266516, at *22-23 (N.D. Tex. Dec. 6, 2018) (finding $215.00 per hour reasonable rate for attorney in Dallas in mortgage foreclosure case involving breach of contract counterclaim), *adopted by* 2019 WL 156264 (N.D. Tex. Jan. 10, 2019); *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, 2016 WL 2856006, at *5 (N.D. Tex. Apr. 18, 2016) (finding attorney rates of $300.00, $390.00, and $450.00 reasonable in Dallas in mortgage foreclosure case involving breach of contract counterclaim).

However, the Court finds that with six professionals on this matter, the matter was overstaffed, resulting in duplicative and redundant work. *See Dixon v. Bellard*, 2017 WL 6524055, at *4 (N.D. Tex. Dec. 18, 2017). "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996) (quoting *Johnson*, 488 F.2d at 717). In *Dixon*, the plaintiff sought $16,695.50 in attorneys' fees in a breach of contract action disposed of on a motion for default judgment wherein three attorneys "filed a total of four . . . pleadings." *Id.* at *3. Noting the plaintiff's concession in court filings that the case was "a simple one," the court found that the time and labor required and difficulty of questions involved did not warrant the hours and manpower expended and found that the case was one "which would normally be handled by one attorney." *Id.* Ultimately, the court reduced plaintiff's award to $8,500.00 to account for the excessive hours. *Id.* at *4. This case is similar in that six professionals worked on a matter that BMO itself deemed "a straightforward collection action," Mot. 2, and, by the Court's estimation, required no more than seven *substantive* filings on BMO's part. Also, the billing entries show that some of the attorneys' fees were repetitive and duplicative; in particular, the time billed for numerous internal conferences between attorneys demonstrates duplication of attorney time. *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). But there is no evidence that BMO's

12

counsel wrote off hours that were excessive, redundant, or unproductive.[3] Accordingly, the Court finds that the appropriate lodestar is $20,167.00, approximately 31% less than BMO's request and the sum associated with Mr. Chapin's and attorney Andrew Hahn's work in this matter. By the Court's calculation, Mr. Chapin and Mr. Hahn are the attorneys in this case whose bills are the highest based on their respective rates and hours billed. In its discretion, the Court finds that this lodestar accurately accounts for the overstaffing while reflecting the reasonable amount of time necessary to pursue this lawsuit as well as face the challenges Ballesteros presented to settling this matter.

Although there is a strong presumption that the lodestar figure is reasonable, the Court must consider whether the lodestar should be adjusted upward or downward based on the twelve *Johnson* factors. The Court, however, is not required to "recite or even mention the *Johnson* factors, so long as 'the record clearly indicates that the [it] has utilized the *Johnson* framework as the basis for its analysis.'" *Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 596 (5th Cir. 2016) (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669

---

[3] That BMO paid discounted rates, Pl.'s App. 96, does not mitigate the excessive number of hours billed due to overstaffing. Indeed, the Court has already determined that the rates charged were reasonable. Moreover, the Court finds that discounting rates itself does not demonstrate billing judgment, as billing judgment requires evidence that *hours* have been written off as unproductive, excessive, or redundant. *Saizan*, 448 F.3d at 799. *See also Mosley v. Nordquist*, 2016 WL 5794480, at *7-8 (S.D. Miss. Sept. 30, 2016) (finding lack of billing judgment for excessive hours where attorneys charged discounted hourly rates).

F.3d 632, 642 (5th Cir. 2012)); *see also EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

Upon consideration of the *Johnson* factors, the Court finds that no adjustment to the lodestar figure is necessary. This civil action was a typical breach of contract and collection case. The issues involved were neither novel nor difficult. BMO recognizes this. Mot. 2 ("This is a straightforward collection action involving three sets of contracts."). The litigation did not require any unique skill or expertise on the part of the attorneys; nor did it require more than the usual investment of time or labor. Indeed, the default posture of this case indicates that it involved *less* than the usual time and labor for a collection action. No trial was required. The law firm billed BMO on an hourly basis, and there is no evidence before the court that BMO imposed any time limitation on the firm or that other circumstances made representing BMO undesirable. The firm charged a customary fee, which, with the Court's reduction for overstaffing, resulted in an award that is greater than typical for this type of case. *See, e.g., Dixon*, 2017 WL 6524055, at *4 ("[A] typical breach of contract case disposed of on a motion for default judgment fee would be in the range of $3,000[.]").

Moreover, BMO has provided evidence that it incurred $1,104.14 in costs for messenger services, process servers, travel expenses, and filing fees. Pl.'s App. 95. Accordingly, the Court finds that BMO is entitled to recover $20,167.00 in fees and $1,104.14 in costs—$21,271.14 in total.

Finally, the Court finds that Ballesteros is not an infant, incompetent, or a in active military service. Therefore, the District Court should GRANT BMO's Motion and enter default judgment in the amount of $616,720.35 against Ballesteros consistent with these Findings, Conclusions, and Recommendation. It should also GRANT in part and DENY in part BMO's request for attorneys' fees and award BMO $21,271.14 in attorneys' fees and costs.

**SIGNED** July 1, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).